SCOTT J. WITLIN (SBN 137413)
switlin@btlaw.com
STEVE L. HERNÁNDEZ (SBN 229065)
shernandez@btlaw.com
RACHEL T. SEGAL (SBN 274644)
rsegal@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: 310.284.3880
Facsimile: 310.284.3894

Attorneys for Defendant
CENTERPLATE OF DELAWARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL THOMPSON, on behalf of himself and those similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>CENTERPLATE OF DELAWARE, INC., CENTERPLATE, INC., CHRIS VERROS, JEFF TANDBERG, ADRIAN SISHINGTON, HADI K. MANOVAR AND KEVIN MCNAMARA, and DOES 1-5,<br><br>DEFENDANTS. | Case No.<br><br>**CLASS ACTION**<br><br>**DEFENDANT CENTERPLATE OF DELAWARE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, AND 1711-1715**<br><br>[Filed Concurrently with the Declaration of Steve L. Hernández, Declaration of David M. Winarski, and Civil Cover Sheet]<br><br>Removed from the Superior Court of California, County of Santa Clara, Case No. 16CV291643<br><br>Complaint Filed: February 17, 2016 |

PLEASE TAKE NOTICE THAT Defendant Centerplate of Delaware, Inc. hereby removes this action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, and 1711-1715 for the reasons stated below:

## PLEADINGS AND PROCEEDINGS TO DATE

1. On February 17, 2016, Plaintiff Gabriel Thompson ("Plaintiff" or "Thompson") filed a putative class action Complaint (the "Complaint") in the Superior Court of California for the County of Santa Clara, designated as *Gabriel Thompson vs. Centerplate of Delaware, Inc. et al.*, Case No. 16CV291643 (the "Lawsuit").

2. On February 24, 2016, Plaintiff served Centerplate of Delaware, Inc. with the Summons and Complaint. Declaration of David M. Winarski ("Winarski Decl."), ¶ 2 (filed concurrently herewith).

3. The Complaint sets forth the following claims: (1) failure to pay for each hour worked at the appropriate rate; (2) failure to authorize and permit rest periods; (3) failure to provide accurate itemized wage statements; (4) failure to pay all wages due upon separation; and (5) unfair competition. Hernández Decl., ¶ 2, Exhibit 1 ("Complaint") at ¶¶ 39-97 (filed concurrently herewith).

4. The Complaint seeks the following in its Prayer for Relief: (1) preliminary and permanent injunctive relief prohibiting Centerplate from committing the violations alleged; (2) an order certifying the Lawsuit as a class action, Plaintiff as class representative, and Plaintiff's attorneys as class counsel; (3) damages according to proof; (4) restitution according to proof; (5) an equitable accounting to identify and restore all wages; (6) statutory penalties; (7) interest accrued to date; (8) liquidated damages under Labor Code section 1194.2; (9) reasonable attorneys' fees, costs, and interest thereon; and (10) such other and further relief as the Court deems just and proper. *Id.* at Prayer.

5. As required by 28 U.S.C. section 1446(a), true and correct copies of all process, pleadings and orders served upon Centerplate to date in this Lawsuit are attached to the Declaration of Steve L. Hernández as Exhibits 1-3. These are the: (1) Civil Case Cover Sheet; (2) Summons; (3) Complaint; and (4) Civil Lawsuit Notice. Hernández Decl. at ¶ 3, Exhibits 1-4. The Answer filed by Centerplate in the Superior Court of California for the County of Santa Clara is attached thereto as

1

Exhibit 5. Hernández Decl. at ¶ 4, Exhibit 4.

## TIMELINESS

6.    The Summons and Complaint were served upon Centerplate of Delaware, Inc. on February 24, 2016. Winarski Decl. at ¶ 2. Thus, 30 days since service of the Summons and Complaint have not yet expired. As a result, this Notice is timely pursuant to 28 U.S.C. § 1446(b). *See also* Fed. R. Civ. P.

## JURISDICTION

7.    The Court has original jurisdiction over this civil action pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d)(2), 1453, and 1711-1715), as: (1) it involves 100 or more potential class members; (2) any class member is a citizen of a state different from any Defendant; and (3) the aggregate amount-in-controversy exceeds $5,000,000.00, exclusive of costs and interest. 28 U.S.C. §§ 1332(d)(2), (d)(6), and (d)(11)(B)(i).

8.    The Court also has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question), as it involves valid and applicable collective bargaining agreements pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), as well as purportedly concerted action by employees covered under the National Labor Relations Act (the "NLRA"), as amended, 29 U.S.C. §§ 151-169.

9.    Removal is therefore proper under 28 U.S.C. section 1441(a) because a district court of the United States would have had original jurisdiction over this civil action on the basis of: (1) CAFA jurisdiction, 28 U.S.C. §§ 1332(d)(2); (2) and federal question jurisdiction, 29 U.S.C. §§ 151-169, or either of them, had the Complaint originally been brought in federal court.

## ORIGINAL JURISDICTION—THE CLASS ACTION FAIRNESS ACT

10.    This Lawsuit is a civil action over which this Court has original jurisdiction pursuant to CAFA. Accordingly, this Lawsuit may be removed pursuant to 28 U.S.C. § 1441.

11.    Pursuant to the CAFA, federal district courts have original jurisdiction over a class action if: (1) it involves 100 or more potential class members; (2) any class member is a citizen of a state different from any defendants; and (3) the aggregate amount-in-controversy exceeds

$5,000,000.00, exclusive of costs and interest. *See* 28 U.S.C. §§ 1332(d)(2), (d)(6), and (d)(11)(B)(i).

<u>Class Size</u>

12. The proposed putative class is defined as: "All employees and former employees of Defendant who worked at Levi's Stadium during the 2015-2016 NFL season and who are entitled to all appropriate relief and attorneys' fees and costs." Complaint at ¶ 27. In addition to this class definition, the Complaint sets forth four sub-classes: (1) Each Hour Worked Subclass; (2) Rest Period Subclass; (3) Records Subclass; and (4) Separation Subclass. *Id.*

13. The Complaint alleges that "Defendant employed approximately 3000 people during the course of the 2015-2016 NFL season." Complaint at ¶ 30. Therefore, for purposes of removal pursuant to CAFA jurisdiction, there are well beyond the required 100 members in the proposed class.

<u>Citizenship of the Parties</u>

14. Defendant Centerplate is now, and was at the time this action commenced, a citizen of the State of Delaware and of the State of Connecticut under 28 U.S.C. Section 1332(c)(1), because it is now, and was at the time this action commenced, incorporated under the laws of the State of Delaware, and its principal place of business is in Stamford, Connecticut, which is where its corporate headquarters are located and where Centerplate's officers direct, control, and coordinate the corporation's activities. Winarski Decl. at ¶ 3.

15. Defendants Chris Verros, Jeff Tandberg, Adrian Dishington (erroneously sued as Adrian "Sishington"), Hadi K. Monavar (erroneously sued as Hadi K. "Manovar") all worked for Volume Services, Inc. DBA Centerplate ("Centerplate"). Winarski Decl. at ¶ 4. Defendant Kevin McNamara formerly worked for Centerplate. *Id.* None of these individuals is a primary Defendant, as they are not primarily liable, if liable at all, for the allegations in the Complaint. All of these individual Defendants are citizens of the United States and none is a citizen of California. *Id.*

16. Plaintiff was employed by Centerplate to work at Levi's Stadium in Santa Clara, California at all relevant times in this Lawsuit, Winarski Decl. at ¶ 5, and was therefore, on information and belief, resident in and a citizen of the State of California at the time he commenced this Lawsuit in state court, and at all relevant times. As such, Plaintiff could not have been a citizen of the States of Delaware or Connecticut. 28 U.S.C. section 1332(d)(2)(A).

3

DEFENDANT CENTERPLATE OF DELAWARE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, AND 1711-1715

17. According to the definition of the proposed class in the Complaint—"All employees and former employees of [Centerplate] who worked at Levi's Stadium during the 2015-2016 NFL season and who are entitled to all appropriate relief and attorneys' fees and costs"—all proposed class members worked at Levi's Stadium in Santa Clara, California during the proposed class period. Complaint at ¶ 27. Accordingly, these putative class members were residents of the State of California during this period. As such, the proposed class members were not citizens of the States of Delaware or Connecticut within the meaning of 28 U.S.C. sections 1332(d)(2)(A).

18. On information and belief, greater than two-thirds of potential class members were residents of the State of California at the time this Lawsuit was filed, and therefore not citizens of the States of Delaware or Connecticut within the meaning of 28 U.S.C. sections 1332(d)(2)(A). Winarski Decl. at ¶ 6; *see* Complaint at ¶ 27.

19. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

20. Thus, because Plaintiff and other putative class members are not citizens of any of the states of which Centerplate or the individual Defendants is a citizen, and greater than two-thirds of potential class members are not citizens of the states of which Centerplate or the individual Defendants is a citizen, there is diversity as required by 28 U.S.C. sections 1332(d)(2).

<u>Amount-in-Controversy</u>

<u>The Preponderance of the Evidence Standard</u>

21. "The notice of removal may assert the amount in controversy if the initial pleading seeks: (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). If the plaintiff or the court questions a defendant's amount in controversy allegation, removal is proper where the "district court finds, by the preponderance of the evidence, that the amount in controversy exceeds"

4

DEFENDANT CENTERPLATE OF DELAWARE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, AND 1711-1715

the jurisdictional threshold. 28 U.S.C. § 1446(c)(2)(B).

22.     "Under [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996). This "burden is not daunting, as courts recognize that under this standard, a removing defendant is *not* obligated to research, state, and prove the plaintiffs' claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted) (emphasis in original) ("*Korn*"); *see also Valdez v. Allstate Ins. Co.*, 372 F. 3d 1115, 1117 (9th Cir. 2004) ("[T]he parties need not predict the trier of fact's eventual award with one hundred percent accuracy.").

23.     In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is, therefore, what amount is put "in controversy" by the plaintiff's complaint or other papers, not what the defendant will actually owe for the actual number of violations that occurred, if any. *Korn*, 536 F. Supp. 2d at 1204–05. The jurisdictional minimum may be satisfied by claims for special and general damages, attorneys' fees and punitive damages. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002). Also, in actions for declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977).

24.     Because the Complaint in this action fails to plead a specific amount of damages, and the amount of damages is vague and ambiguous, Centerplate need only show that the amount-in-controversy requirement has been met for subject matter jurisdiction (diversity and CAFA) by a preponderance of evidence. 28 U.S.C. §§ 1446(c)(2) and 1453 (applying section 1446 to CAFA). The calculations for the amount-in-controversy required for removal under diversity and CAFA jurisdiction are detailed below.

25.     <u>Minimum Wage Claim</u>: Thompson seeks unpaid minimum wages for himself and each member of the potential class. Complaint at ¶¶ 45, 49, 51, 53. Thompson alleges that he "performed work for Centerplate without receiving any compensation throughout the 49er's 2015-2016 NFL

5

DEFENDANT CENTERPLATE OF DELAWARE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, AND 1711-1715

Case 5:16-cv-01486-EJD   Document 1   Filed 03/25/16   Page 7 of 15

season but particularly during Super Bowl 50," Complaint at ¶ 10; that for Super Bowl 50 "[n]o time spent engaged in travel or waiting for travel was compensated at any rate, *id.*; that he worked for Centerplate "for hours for which he was not compensated," some due to Centerplate's alleged "failure to pay for the travel time and associated waiting time" while others due to Centerplate's alleged "failure to pay for all hours Plaintiff was on the clock," Complaint at ¶ 42; that these unpaid hours were "not compensated at any rate," Complaint at ¶ 43; that Centerplate "failed to pay Plaintiff and all members of the class wages for all hours worked," Complaint at ¶ 45, and that he and the proposed class "seek to recover compensation for time worked but not paid," Complaint at ¶ 49. Thus, it appears from the Complaint that Thompson is claiming that he and potential class members are owed at least minimum wage for travel time and waiting time on Super Bowl 50, as well as other hours worked throughout the 2015-2016 NFL season.

26. With respect to Super Bowl 50, which was on February 7, 2016, Thompson alleges that he was required to report to a parking lot at Avaya Stadium in San Jose approximately 1.5 hours before the start of his scheduled shift and take a company-sponsored bus to Levi's Stadium. Complaint at ¶¶ 10, 13. He alleges that it took 3.5 hours to be returned to his vehicle after he completed his shift and that he was not paid at any rate for any time spent traveling or waiting for travel. *Id.* Based on these allegations, Thompson is seeking minimum wages for approximately 5 hours of work at the Super Bowl in the amount of **$50.00** (California's minimum wage of $10.00 per hour of minimum wage x 5 hours). Applying Thompson's allegations to the proposed class members he alleges were similarly situated puts in controversy **$46,350.00** for the Super Bowl alone ($10.00 per hour x 5 hours x 927 putative class members who worked during the Super Bowl 50[1]). Assuming a similar number of putative class members worked during each of the remaining 10 NFL games (11 total games, including the Super Bowl) that took place at Levi's Stadium during the 2015-2016 NFL season, Winarski Decl. at ¶ 8, and that they had the same amount of unpaid time during those 10 other games, this puts an additional **$468,135.00** in controversy (($46,350.00 for the only other game played in 2016) +

---

[1] This is the number of putative class members who worked on Super Bowl 50, which was on February 7, 2016. Winarski Decl. at ¶ 7.

DEFENDANT CENTERPLATE OF DELAWARE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, AND 1711-1715

$375,435.00 for the nine games played in 2015 (($9.00 per hour (2015 minimum wage) x 5 hours x 927 putative class members) x 9 games)). *Id.*

27. As Thompson seeks liquidated damages for the alleged minimum wage violation for himself and the proposed class pursuant to California Labor Code section 1194.2(a), Complaint at ¶ 51, this same amount, **$468,135.00**, is put in controversy as liquidated damages.

28. Thompson also seeks civil penalties for the alleged minimum wage violation for himself and the proposed class pursuant to Wage Order No. 5, Section 20 in the amount of $50.00 for an initial violation and $100.00 for each subsequent violative pay period, Complaint at ¶ 53. Applying the same assumptions as applied above in paragraph 26 puts in controversy **$973,350.00** in civil penalties (($50.00 for initial violation + ($100.00 per subsequent pay period x 10 subsequent pay periods (based on the average of 11 total pay periods potential class members had in the 2015-2016 NFL season[2])) x 927 putative class members).

29. Thus for the minimum wage claim on behalf of himself and the other putative class members Thompson's claim totals **$1,816,920.00** not including the attorneys fees he seeks.

30. <u>Unpaid Overtime Wages Claim</u>: Thompson also seeks unpaid overtime wages for himself and each member of the potential class. Complaint at ¶¶ 50, 53. Thompson claims that for working at the Super Bowl, he worked over 12 hours but was paid only for 11.25 hours at his overtime rate. Complaint ¶ 13. He then alleges that he was not paid at all for any hours over 11.25, including the 3.5 hours he alleges he was under Centerplate's control following his shift. Complaint ¶ 13. Based on these allegations, Thompson is, conservatively, seeking overtime wages for approximately .75 hours (for the time between the 11.25 hours for which he was paid and the 12th hour of work) of work and double time wages (for hours worked over 12) for approximately 3.5 hours of work at the Super Bowl). Applying these allegations to the proposed class members he alleges were similarly situated puts in controversy **$95,664.45** in unpaid overtime wages for the Super bowl alone ((($22.12 per hour (the average overtime rate for employees who worked on Super Bowl 50, Winarski Decl. at ¶ 11) x .75

---

[2] This is the number of pay periods potential class members had during the 2015-2016 NFL season, given their completion of an average of approximately 22.67 workweeks and Centerplate's paying employees on a bi-weekly basis. Winarski Decl. at ¶¶ 13.

hours of alleged unpaid overtime) + ($29.48 per hour (the average double time rate for employees who worked on Super Bowl 50, Winarski Decl. at ¶ 11) x 3.5 hours of unpaid double time) x 927 potential class members who worked on Super Bowl 50, Winarski Decl. at ¶ 7). Extrapolating this out for the remaining 10 NFL games played at Levi's Stadium during the 2015-2016 NFL season puts an additional **$956,644.50** in controversy ($95,664.45 x 10 NFL games).

31.   Thompson also seeks civil penalties for himself and the proposed class for the alleged overtime violation pursuant to Wage Order No. 5, Section 20 in the amount of $50.00 for an initial violation and $100.00 for each subsequent violative pay period, Complaint at ¶ 53. Applying the same assumptions as applied above in paragraph 30, the Complaint seeks **$973,350.00** in civil penalties for unpaid overtime wages on behalf of the proposed class (($50.00 for initial violation + ($100.00 per subsequent pay period x 10 subsequent pay periods (based on the average of 11 total pay periods potential class members had in the 2015-2016 NFL season[3])) x 927 putative class members (again, assuming that approximately the same number of employees worked during each NFL game)).

32.   Thus for the overtime claim on behalf of himself and the other putative class members Thompson's claim totals **$2,025,678.90** not including the attorneys fees he seeks.

33.   <u>Rest Period Claim</u>: Thompson also seeks rest period penalties on behalf of himself and each of the proposed class members, pursuant to Labor Code section 226.7, as well as civil penalties pursuant to Wage Order No. 5, Section 20 for violation of the Wage Order's requirement that rest periods be authorized and permitted. Complaint at ¶¶ 60, 63. Given that the Complaint appears to seek rest period penalties for every shift worked by Thompson and each proposed class member, as well as for the "statutory period," or a period of up to three years (limited here by the fact that Levi's Stadium opened on July 17, 2014, Winarski Decl. at ¶ 14), Complaint at ¶ 58, the rest period claim seems much broader than the above-described claims. Nevertheless, assuming, conservatively, that the intent was to claim that the potential class members working during the 2015-2016 NFL season were not authorized and permitted to take rest breaks, this puts approximately $151,629.39 in controversy:

---

[3] This is the number of pay periods potential class members had during the 2015-2016 NFL season, given their completion of an average of approximately 22.67 workweeks and Centerplate's paying employees on a bi-weekly basis. Winarski Decl. at ¶¶ 13.

(($14.87 per hour (the average rate of pay for putative class members, Winarski Decl. at ¶ 9) x 11 games during the 2015-2016 NFL season x, 927 potential class members per game).

34. As Thompson also seeks on behalf of himself and each proposed class member civil penalties pursuant to Wage Order No. 5, Section 20 for violation of the Wage Order's requirement that rest periods be authorized and permitted, an additional **$973,350.00** in civil penalties at issue for the proposed class (($50.00 for initial violation + ($100.00 per subsequent pay period x 10 subsequent pay periods (based on the average of 11 total pay periods potential class members had in the 2015-2016 NFL season[4])) x 927 putative class members (again, assuming that approximately the same number of employees worked during each NFL game).

35. Thus for the rest period claim on behalf of himself and the other putative class members Thompson's claim totals **$1,124,979.39** not including the attorneys' fees he seeks.

36. <u>Wage Statement Claim</u>: Thompson also seeks penalties under Labor Code section 226 for each and every wage statement he and each proposed class member received. Complaint at ¶ 70. All potential class members were paid on a bi-weekly basis at all relevant times. Winarski Decl. at ¶ 12. Section 226 provides a penalty of $50.00 for the first violative wage statement and $100.00 for each subsequent violative wage statement, with a cap of $4,000.00. As potential class members had an average of 11 pay periods during the 2015-2016 NFL season, Winarski Decl. at ¶¶ 13, their wage statement claim amounts to approximately **$973,350.00** (($50.00 for initial violation + ($100.00 per subsequent pay period x 10 subsequent pay periods (based on the 11 total pay periods potential class members had on average during the 2015-2016 NFL season, *id.*)) x 927 putative class members (again, assuming that approximately the same number of employees worked during each NFL game)).

37. As Thompson also seeks on behalf of himself and each proposed class member civil penalties pursuant to Wage Order No. 5, Section 20 for violation of the Wage Order's requirement that employers provide accurate, itemized wage statements, an additional **$973,350.00** is put at issue (($50.00 for initial violation + ($100.00 per subsequent pay period x 10 subsequent pay periods (based

---

[4] This is the number of pay periods potential class members had during the 2015-2016 NFL season, given their completion of an average of approximately 22.67 workweeks and Centerplate's paying employees on a bi-weekly basis. Winarski Decl. at ¶¶ 13.

9

DEFENDANT CENTERPLATE OF DELAWARE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, AND 1711-1715

1  on the 11 total pay periods potential class members had during the 2015-2016 NFL season, *id.*)) x 927
2  potential class members (again, assuming that the same number of employees worked regular NFL
3  games as worked the Superbowl).

4      38.    Thus for the wage statement claim on behalf of himself and the other putative class
5  members Thompson's claim totals **$1,946,700.00** not including the attorneys fees he seeks.

6      39.    <u>Final Wages Claim</u>: Thompson also seeks waiting time penalties under Labor Code
7  section 203 for Centerplate's alleged failure to pay all wages due upon separation on behalf of himself
8  and each and every proposed class member. Complaint at ¶ 82. The Complaint alleges that "[a]ll
9  Centerplate employees at Levi's Stadium have been terminated as there are no scheduled events
10 requiring them to perform services…Each of these employees have been deprived of wages
11 immediately due upon separation[.]" Complaint at ¶ 79. Accordingly, this final wages claim puts in
12 controversy waiting time penalties for every Centerplate employee that worked at Levi's Stadium as
13 follows: Assuming Thompsons's claims are accurate, as must be done for purposes of removal, the
14 average daily rate for the Super Bowl was $368.62 (($22.12 per hour (the average rate of pay for
15 employees who worked on Super Bowl 50), Winarski Decl. at ¶ 11, x 12 hours) + ($29.48 per hour (the
16 average double time rate of pay for employees who worked on Super Bowl 50, *id.*) x 3.5 hours)).
17 Multiplying this daily rate by 30 days, per section 203, and then by the 3,000 putative class members
18 puts approximately **$33,175,800.00** at issue for waiting time penalties.

19     40.    <u>Unfair Competition Claim</u>: Thompson also seeks restitution of wages and all other
20 compensation allegedly withheld from him and each proposed class member due to Centerplate's
21 allegedly unfair business practices in violation of Business and Professions Code sections 17200 *et*
22 *seq*. Complaint at ¶ 91. While the lack of specificity in pleading by Plaintiffs makes it difficult to
23 discern what amount is being sought in restitution, any sum sought would be added to the amount in
24 controversy here.

25     41.    <u>Attorneys' Fees</u>: Thompson also seeks attorneys' fees on behalf of himself and each
26 proposed class member, Complaint *in passim*, which may be included when determining the amount-
27 in-controversy. *Fletcher v. Toro Co.*, 08-CV-2275 DMS WMC, 2009 WL 8405058 (S.D. Cal. Feb. 3,
28 2009) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir.2005)) (requirement may be

satisfied "by claims of . . . attorney's fees (if authorized by statute or contract)."). The Ninth Circuit has set an attorney fee benchmark for common fund cases, as a certified class action would likely be deemed, at 25 percent. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F. 2d 268, 272 (9th Cir. 1989); *see also Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990) (citing to *3 Newberg on Class Actions*, § 14.03, which explains that 20-30 percent is a usual range for a common fund award for attorneys' fees). Even if one were to apply the lower end of that range (20%) to the amount-in-controversy based on the above causes of action (unpaid minimum wage, unpaid overtime and double time, unpaid rest period penalties, unpaid wage statement penalties, and unpaid waiting time penalties), the potential attorneys' fees alone would place the total amount-in-controversy well in excess of $5,000,000.00 threshold.

42. <u>Sum</u>: The claims asserted in the Complaint on behalf of Plaintiff and the potential class members for unpaid minimum wage, unpaid overtime and double time, unpaid rest period penalties, unpaid wage statement penalties, and unpaid waiting time penalties, put in controversy well over the $5,000,000.00 jurisdictional threshold, even without including attorneys' fees and restitution:

| Claim | Amount in Controversy |
|---|---|
| Minimum Wage Claims | $1,816,920.00 |
| Overtime Claims | $2,025,678.90 |
| Rest Period Claims | $1,124,979.39 |
| Wage Statement Claims | $1,946,700.00 |
| Waiting Time Penalties | $33,175,800.00 |
| **Total** | **$40,090,078.29** |

43. As such, on the grounds that this potential class action involves a class far exceeding 100 members, that potential class members are citizens of a state different from any Defendants, and that the amount-in-controversy far exceeds the required sum of $5,000,000.00, exclusive of interests and costs, original jurisdiction over this matter exists pursuant to CAFA. 28 U.S.C. §§ 1332(d)(2), 1453, and 1711-1715). Accordingly, this Lawsuit may be removed pursuant to 28 U.S.C. § 1441.

### FEDERAL QUESTION JURISDICTION

44. Another basis for removal of this action arises pursuant to 28 U.S.C. § 1331 because this Court has subject matter jurisdiction to adjudicate claims arising under the Constitution, laws or

1 | treatises of the United States. A defendant may remove an action to federal court under 28 U.S.C. § 1441(a) if the plaintiff's complaint presents a federal question, such as a federal cause of action. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

45. There are two bases for federal question jurisdiction here, as this Lawsuit involves valid and applicable collective bargaining agreements pursuant to Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185(a) ("LMRA"), as well as purportedly concerted action by employees covered under the National Labor Relations Act (the "NLRA"), as amended, 29 U.S.C. §§ 151-169.

46. With respect to Section 301 of the LMRA, all potential class members were covered by a collective bargaining agreement between Centerplate and UNITE HERE, Local 19 ("CBA") during the class period. Winarski Decl. at ¶ 15.

47. Federal question jurisdiction therefore exists in this action based on the complete preemption of Plaintiff's claims by Section 301, as the applicable CBA governed the terms and conditions of potential class members' employment and as a result, this Lawsuit is a suit for "violation of [a contract] between an employer and a labor organization" within the meaning of Section 301. 29 U.S.C. § 185(a).

48. With respect to the NLRA, "[e]mployees' class and collective actions are protected concerted activity in that they seek to initiate concerted activity for mutual aid or protection" under Section 7 of the National Relations Act ("NLRA"). *In Re D. R. Horton, Inc.*, 357 NLRB No. 184, *9 (Jan. 3, 2012) (reversed in part on other grounds).

49. The Complaint was filed as a class action and raises questions regarding class and collective issues. Hernández Decl. at ¶ 3, Exh. 3. Therefore the conduct of Plaintiff and the potential class members in asserting the claims alleged in the Complaint is arguably protected or prohibited by the NLRA, as amended, 29 U.S.C. §§ 151-169.

50. Federal question jurisdiction therefore also exists in this action based on the complete preemption of Plaintiff's claims by the NLRA, as this Lawsuit involves purportedly concerted action by employees. *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959).

12
DEFENDANT CENTERPLATE OF DELAWARE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, AND 1711-1715

## VENUE

51. This Lawsuit was filed and is pending in the Superior Court of California, County of Santa Clara.

52. Thus, this Lawsuit is properly removed to this Court pursuant to 28 U.S.C. § 1441(a), because it is the judicial district and division in which the Lawsuit is pending.

53. This Notice will be promptly filed with the state court and served upon opposing counsel in accordance with 28 U.S.C. § 1446(d).

## RESERVATION OF RIGHTS

54. Centerplate of Delaware, Inc. reserves all rights, claims, and defenses (including all defenses under Rule 12(b) of the Federal Rules of Civil Procedure).

55. WHEREFORE, Centerplate hereby removes this action from the Superior Court of California, County of Santa Clara, to this United States District Court for the Northern District of California.

Dated: March 25, 2016

SCOTT J. WITLIN
STEVE L. HERNÁNDEZ
RACHEL T. SEGAL
BARNES & THORNBURG LLP


By /s/ SCOTT J. WITLIN
Scott J. Witlin
Attorneys for Defendant
CENTERPLATE OF DELAWARE, INC.

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2029 Century Park East, Suite 300, Los Angeles, CA 90067.

On March 25, 2016, I served the foregoing document(s) described as: **DEFENDANT CENTERPLATE OF DELAWARE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, 1453, AND 1711-1715** on the interested party(ies) below, using the following means:

David A. Rosenfeld, Esq.
William A. Sokol, Esq.
Caren P. Sencer, Esq.
Caroline N. Cohen, Esq.
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501

☒ BY UNITED STATES MAIL  I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

☐ BY OVERNIGHT DELIVERY  I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ BY MESSENGER SERVICE  I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for service.

☒ (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 25, 2016 at Los Angeles, California.

Rose Shushanyan
Print Name

*/s/ Rose Shushanyan*
Signature